IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
UNITED STATES OF AMERICA          )
                                  )
     Plaintiff,                   )
                                  )
     v.                           )     1:99CV00760
                                  )
10.10 ACRES LOCATED ON SQUIRES    )
ROAD IN CHEEKS TOWNSHIP,          )
ORANGE COUNTY, NORTH CAROLINA,    )
WITH ALL APPURTENANCES AND        )
IMPROVEMENTS THEREON;             )
TWO TRACTS CONTAINING 0.734       )
ACRES AND 0.266 ACRES LOCATED     )
AT 3031 SIDNEY ALBRIGHT TRAIL     )
SNOW CAMP, PATTERSON TOWNSHIP,    )
ALAMANCE COUNTY, NORTH            )
CAROLINA, WITH ALL                )
APPURTENANCES AND IMPROVEMENTS    )
THEREON;                          )
1988 OAKWOOD MOBILE HOME,         )
VIN HONC27614CK3219517,           )
                                  )
     Defendants.                  )
```

MEMORANDUM OPINION

OSTEEN, District Judge

Plaintiff United States of America brings this civil forfeiture action against Defendant properties pursuant to Title 21 United States Code Section 881 on the grounds that the property was used or intended to be used to commit or facilitate the commission of a drug crime or that it constitutes proceeds traceable to the exchange of controlled substances. Plaintiff

also seeks forfeiture under Title 18 United States Code Section 981, alleging the property was involved in actual or attempted money laundering transactions. This matter is now before the court on Plaintiff's uncontested motion for summary judgment. For the reasons set forth herein, Plaintiff's motion will be granted.

**I.   BACKGROUND**

Plaintiff instituted this action in September 1999 against Defendant properties, which consist of 10.10 acres located on Squires Road in Orange County, North Carolina ("Orange County Property"), and two parcels of land situated at 3031 Sidney Albright Trail in Alamance County, North Carolina ("Alamance County Property"). The verified complaint for forfeiture alleges that Defendant properties were purchased with large sums of cash by "Jose Lopez" or "Jose A. Lopez," also known as Jose Antonio Aguayo-Lopez (hereinafter, "Jose Lopez"). Jose Lopez was arrested and indicted in the summer of 1999 for possession with intent to distribute and conspiracy to distribute large quantities of marijuana. See United States v. Santos, No. 1:99CR00160 (M.D.N.C. filed May 28, 1999).

Shortly after this matter was initiated, the charges against Jose Lopez were dismissed without prejudice following a suppression hearing. See id. (Motion and order for dismissal dated Sept. 13, 1999). Thereafter, Jose Lopez filed a claim of

2

ownership and answer asserting an interest in all Defendant
properties.[1]  Jose Lopez later withdrew his claim of ownership to
the Alamance County Property, and all appurtenances thereon.

   Following a lengthy discovery period, Plaintiff and Jose
Lopez entered into settlement negotiations.  The negotiations
fell through when Jose Lopez disappeared in May 2003.  Plaintiff
discovered that his disappearance was due to his arrest on May
26, 2003, in connection with the distribution of more than a half
ton of marijuana.  Jose Lopez pled guilty to conspiracy to
distribute marijuana on September 4, 2003.  See United States v.
Lopez, No. 1:03CR00268 (M.D.N.C. filed July 28, 2003) (docket
entry of plea hearing held Sept. 4, 2003).

   Plaintiff moved for summary judgment on March 31, 2004.  No
opposition was filed by Jose Lopez.  On July 26, 2004, the
clerk's office sent a deficiency notice to him warning that
because of a failure to respond to summary judgment the court
would be considering the motion unopposed.  On September 1, 2004,
counsel for Jose Lopez responded in a letter to the clerk of
court stating that he has been unable, despite diligent efforts,
to locate Jose Lopez and that no opposition would be forthcoming.

---

[1] There was an additional claim made as to the Alamance
County Property.  On December 2, 1999, Alamance County asserted a
claim to the extent of unpaid real estate taxes.  Plaintiff
acknowledges the County's claim as a prior and superior lien.  No
other claims were made against Defendant properties and the court
has entered default against all persons having a claim against
the properties except Alamance County and Jose Lopez.

3

Plaintiff's unopposed motion for summary judgment is now pending before the court.

**II.  STANDARD OF REVIEW**

Summary judgment is appropriate when an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that there is no genuine issue of material fact, thus entitling the moving party to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).  The basic question in a summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986).  Summary judgment should be granted unless a reasonable jury could return a verdict in favor of the nonmovant on the evidence presented.  <u>McLean v. Patten Cmties., Inc.</u>, 332 F.3d 714, 719 (4th Cir. 2003) (citing <u>Anderson</u>, 477 U.S. at 247-48, 106 S. Ct. at 2509-10).  A court "must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." <u>Williams v. Staples, Inc.</u>, 372 F.3d 662, 667 (4th Cir. 2004) (citing <u>Thompson v. Aluminum Co. of Am.</u>, 276 F.3d 651, 656 (4th Cir. 2002)).  Although the court must view the facts in the light most favorable to the nonmovant, <u>see</u> <u>Anderson</u>, 477 U.S. at 255, 106 S. Ct. at 2513, "bare allegations unsupported by legally competent

evidence do not give rise to a genuine dispute of material fact."
Solis v. Prince George's County, 153 F. Supp. 2d 793, 807 (D. Md.
2001); see Ross v. Communications Satellite Corp., 759 F.2d 355,
364 (4th Cir. 1985), abrogated on other grounds, Price Waterhouse
v. Hopkins, 490 U.S. 228, 109 S. Ct. 1775 (1989) ("Genuineness
means that the evidence must create fair doubt; wholly
speculative assertions will not suffice."). When a party fails
to respond to a summary judgment motion, it may leave
uncontroverted those facts established by the motion, but the
moving party must still show that the uncontroverted facts
entitle it to judgment as a matter of law. Custer v. Pan Am.
Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993).

**III. ANALYSIS**

The civil forfeiture principles upon which Plaintiff relies
are well established. First, "[a]ll . . . things of value
furnished or intended to be furnished by any person in exchange
for a controlled substance . . . [and] all proceeds traceable to
such an exchange" are subject to forfeiture to the United States.
21 U.S.C. § 881(a)(6). Federal statutes also provide that all
property "involved in" a money laundering violation is subject to
forfeiture. See 18 U.S.C. § 981(a)(1)(A) ("Any property, real or
personal, involved in a transaction or attempted transaction in
violation of [various money laundering statutes], or any property
traceable to such property" is subject to forfeiture). Property

5

involved in money laundering includes the corpus or funds laundered, any fees earned for the money laundering, and all property facilitating the money laundering activities. United States v. All Monies ($477,048.62) in Account No. 90-3617-3, 754 F. Supp. 1467, 1473 (D. Haw. 1991) (citing Cong. Rec. S17,365 (daily ed. Nov. 10, 1988)). Real property is involved in a money laundering offense if laundered funds are used to make payments toward purchase of the property and to pay for improvements. United States v. Myers, 21 F.3d 826, 831 (8th Cir. 1994).

In civil forfeiture cases commenced on or after August 23, 2000, the government has the initial burden of showing there is probable cause to believe a substantial connection exists between the property to be forfeited and the criminal activity prohibited by statute. United States v. Two Tracts of Real Property, 665 F. Supp. 422, 424 (M.D.N.C. 1987); Boas v. Smith, 786 F.2d 605, 609 (4th Cir. 1986). "The definition of probable cause applicable here is the same as that which applies elsewhere: 'reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion.'" United States v. $95,945.18, 913 F.2d 1106, 1110 (4th Cir. 1990) (quoting United States v. $364,960.00, 661 F.2d 319, 323 (5th Cir. 1981)). Circumstantial evidence of drug activity, including the making of unusually large cash purchases, is sufficient to support a finding of probable cause in a forfeiture action. United States

6

v. Thomas, 913 F.2d 1111, 1115, 1117 (4th Cir. 1990). If the government establishes probable cause, the burden then shifts to the claimant to "prove by a preponderance of the evidence that either the activities did not occur or that the claimant had no knowledge." Two Tracts of Real Property, 665 F. Supp. at 424. "[I]f the claimant cannot produce any such evidence, summary judgment is properly granted to the government based upon its showing of probable cause." United States v. 7715 Betsy Bruce Lane, 906 F.2d 110, 111 (4th Cir. 1990); see United States v. B & M Used Cars, 860 F.2d 121, 125 (4th Cir. 1988) (holding that "forfeiture under 21 U.S.C. § 881 requires only unrebutted probable cause to believe that property was obtained in violation of statute").

The application of these principles points persuasively to the conclusion that Defendant properties are forfeited to the United States. The unrebutted evidence is that Jose Antonio Aguayo-Lopez, Jose A. Lopez, and Jose Lopez are the same individual, and this individual was involved in a drug trafficking ring which was importing large amounts of marijuana into this judicial district. In or around September 1998, law enforcement officials raided the residence of Jose Lopez's brother, Martin Aguayo-Lopez ("Martin Lopez"), and recovered 400 pounds of marijuana and approximately $26,000 in U.S. currency. Upon further investigation, law enforcement learned that an additional 600 pounds of marijuana had been transferred to Jose

Lopez. Jose Lopez's girlfriend told law enforcement that in late September 1998, she observed Jose and Martin Lopez (the "Lopez brothers") counting large amounts of currency inside a storage building behind the mobile home she shared with Jose Lopez. She stated the money was in stacks that covered the floor.

It is also undisputed that Jose Lopez paid large sums of cash to purchase Defendant properties and, in so doing, to avoid reporting requirements. David Poole, the real estate agent representing Jose Lopez in the purchase of the Orange County Property, recalls the Lopez brothers producing a suitcase full of $100, $50, and $20 bills in order to make a $500 earnest money deposit. At the time of closing on October 8, 1997, although Poole had tried to convince Jose Lopez to finance the balance of the property, the Lopez brothers arrived at the realtor's office with a large brown paper bag full of currency. The $20,000 needed for closing was removed from the bag, but the bag was still at least two-thirds full of currency. After Poole told the Lopez brothers that cash would not be accepted at closing, Poole drove the Lopez brothers to different banks in Mebane, North Carolina, to obtain sufficient cashier's checks of low dollar amounts to meet the amount needed for closing and avoid transaction reporting paperwork. Jose Lopez also paid a substantial amount in cash for the Alamance County Property in December 1998. Samuel Gardner, the prior owner of the property, identified the Lopez brothers to law enforcement as the buyers of the Alamance County Property. The Lopez brothers paid $17,000 in

8

cash as a down payment instead of a cashier's check and an additional $23,000 in cash the following day as final payment for the property. Martin Lopez requested that no title search be conducted for the property and asked that the deed be placed in the name of his brother, Jose Lopez.

The evidence presented by Plaintiff clearly establishes probable cause to believe that Defendant properties were purchased with proceeds of illegal drug trafficking and were involved in money laundering. Jose Lopez, having failed to file an opposition to summary judgment, has not offered any evidence to rebut Plaintiff's case of probable cause. Accordingly, Defendant properties, including all appurtenances thereon, are subject to civil forfeiture and Plaintiff is entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated herein, the court will grant Plaintiff's motion for summary judgment. A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

This the 23rd day of August 2005.

*[signature]*
United States District Judge